

*U.S. Department of Justice*

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*
*One Saint Andrew's Plaza*
*New York, New York 10007*

May 13, 2019

**BY ECF**
The Honorable J. Paul Oetken
United States District Judge
Southern District of New York
40 Foley Square
New York, New York, 10007

      Re:  *United States v. Adam Field*, 18 Cr. 426 (JPO)

Dear Judge Oetken:

      The defendant in the above-captioned case is scheduled to be sentenced on May 20, 2019, at 11:30 a.m.  The Government respectfully submits this letter in connection with sentencing and in response to the defendant's submission, dated May 6, 2019.  The parties stipulated that the applicable United States Sentencing Guidelines ("U.S.S.G" or the "Guidelines") range is 135 to 168 months' imprisonment (the "Stipulated Guidelines Range").  For the reasons set forth below, the Government submits that a sentence within Stipulated Guidelines Range is appropriate in this case.

      **I.**     **Offense Conduct**

      On November 30, 2017, and January 11, 2018, the National Center for Missing and Exploited Children ("NCMEC") provided law enforcement with information regarding an Instagram account, a Twitter account, and a Tumblr account, each of which was suspected of having uploaded child pornography.  (Presentence Investigation Report, dated April 9, 2019 ("PSR"), ¶¶ 10, 11, 12).  Based on the user information for the three social media accounts, such as the email address, telephone number, and IP address, and through its investigation, law enforcement identified the defendant, Adam Field, as the user of the three social media accounts.  (PSR ¶¶ 10-13).

      On April 19, 2018, law enforcement officers met with the defendant at his Bronx residence, and during the course of the interview, the defendant identified the three social media accounts as his own.  (PSR ¶ 14).  After being advised of and waiving his *Miranda* rights, the defendant admitted to uploading child pornography from his Bronx residence using the three social media accounts flagged by NCMEC, and he admitted to trading child pornography using the social media application KIK—a platform frequently used to trade child pornography.  (PSR ¶¶ 15, 16).

The defendant also consented to the search of his cellphone during the April 19 interview. (PSR ¶ 17). Law enforcement recovered approximately 32 images and 570 videos depicting child pornography, including of prepubescent children, infants, and toddlers, ranging from approximately 3 months old to 16 years old. (PSR ¶ 17). In particular, law enforcement recovered a number of videos showing children and adults being gruesomely tortured and killed. For example, one video, approximately 2 minutes and 21 second in length, shows a female child, approximately 14 or 15 years old, being stabbed in the stomach with a hunting knife, shot in the abdomen twice, and then stabbed in the vagina with a hunting knife by two adult males. (PSR ¶18(i)). Another video, approximately 28 seconds in length, shows a male child hanging from the ceiling by his wrists, with his mouth duct-taped shut, and while hanging, he is stripped naked by an adult male, who pours a flammable liquid over the child's genitals and lights the child's genitals on fire. (PSR ¶ 18(ii)).

## II. Procedural History

The defendant was charged by complaint on May 24, 2018, with one count of receipt and distribution of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(2)(B) and 2, and one count of possession of child pornography, in violation of Title 18, United States Code, Sections 2252A(a)(5)(B) and 2. Law enforcement officers arrested the defendant on May 25, 2018. (PSR ¶ 19). On June 15, 2018, a grand jury returned an indictment against the defendant, charging the defendant with one count of receipt and distribution of child pornography and one count of possession of child pornography. (PSR ¶¶ 1-3). On December 20, 2018, the defendant pled guilty to Count Two of the Indictment—the possession of child pornography count—pursuant to a plea agreement, dated December 3, 2018 (the "Plea Agreement"). (PSR ¶ 5). In the Plea Agreement, the parties agreed that the Guidelines range is 135 to 168 months' imprisonment. (PSR ¶ 5(k)).

On April 9, 2019, the Probation Office issued the final PSR. The PSR calculates the Guidelines in the same manner to which the parties agreed in the Plea Agreement, and concludes that the Stipulated Guidelines Range of 135 to 168 months' imprisonment is the applicable Guidelines range. (PSR ¶ 75.) However, the Probation Office recommends a below-Guidelines sentence of 48 months' imprisonment, followed by five years' supervised release.[1] (PSR at 20.)

On May 6, 2019, the defendant submitted a sentencing memorandum and accompanying exhibits and requested a non-custodial sentence. The defendant argues that the Guidelines for child pornography possession cases are unreasonably high and overstate his culpability in this case, and that a sentence of time served followed by five years of supervised release would be sufficient in light of the defendant's intellectual disability, his ongoing rehabilitation, and his low risk of re-offense, among other factors.

---

[1] The Government agrees that a term of supervised release of at least five years is required by statute. *See* 18 U.S.C. § 3583(k).

### III. Discussion

#### A. Applicable Law

Although *United States v. Booker* held that the Guidelines are no longer mandatory, it also held that they remain in place and that district courts must "consult" the Guidelines and "take them into account" when sentencing. 543 U.S. 220, 264 (2005). As the Supreme Court stated, "a district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range," which "should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007).

After that calculation, a sentencing judge must consider seven factors outlined in Title 18, United States Code, Section 3553(a): (1) "the nature and circumstances of the offense and the history and characteristics of the defendant;" (2) the four legitimate purposes of sentencing, as set forth below; (3) "the kinds of sentences available;" (4) the Guidelines range itself; (5) any relevant policy statement by the Sentencing Commission; (6) "the need to avoid unwarranted sentence disparities among defendants;" and (7) "the need to provide restitution to any victims." 18 U.S.C. § 3553(a)(1)-(7); *see also Gall*, 552 U.S. at 50 & n.6.

In determining the appropriate sentence, the statute directs judges to "impose a sentence sufficient, but not greater than necessary, to comply with the purposes" of sentencing, which are:

> (A)  to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B)  to afford adequate deterrence to criminal conduct;
> (C)  to protect the public from further crimes of the defendant; and
> (D)  to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

18 U.S.C. § 3553(a)(2).

#### B. A Guidelines Sentence Is Appropriate In This Case

In this case, the Government believes a sentence within Stipulated Guidelines Range of 135 to 168 months' imprisonment would achieve the goals of sentencing and appropriately balance the factors considered pursuant to Section 3553(a).

The offense to which the defendant pleaded guilty is serious. As the Second Circuit has noted,

> there can be no question that the dissemination of child pornography is a serious crime that causes real injury to particularly vulnerable victims. As Congress, courts, and scholars all recognize, child pornography crimes at their core demand the sexual exploitation and abuse of children. Not only are children seriously harmed—physically, emotionally, and mentally—in the process of producing such

pornography, but that harm is then exacerbated by the circulation, often for years after the fact, of a graphic record of the child's exploitation and abuse.

*United States v. Reingold*, 731 F.3d 204, 216 (2d Cir. 2013); *see also New York v. Ferber*, 458 U.S. 747, 757-59 & nn. 9-10 (1982) (citing congressional and scholarly reports, and court cases). It is precisely because "[c]hild pornography harms and debases the most defenseless of our citizens" that "[b]oth the State and Federal Governments have sought to suppress it for many years, only to find it proliferating through the new medium of the Internet." *United States v. Williams*, 553 U.S. 285, 307 (2008). "The prevention of sexual exploitation and abuse of children constitutes a government objective of surpassing importance," *Ferber*, 458 U.S. at 757, and this interest extends to seeking to stamp out child pornography at all levels in the distribution chain, *see Osborne v. Ohio*, 495 U.S. 103, 110 (1990).

The Supreme Court recognized in *Paroline* that a child pornography victim "suffers continuing and grievous harm as a result of her knowledge that a large, indeterminate number of individuals have viewed and will in the future view images of the sexual abuse she endured." *Paroline v. United States*, 134 S.Ct. 1710, 1726 (2014) (also finding that harm to a child pornography victim is caused by "the trade in her images," and that a defendant who possessed such images "is a part of that cause, for he is one of those who viewed her images."). "Harms of this sort are a major reason why child pornography is outlawed," and "[t]he unlawful conduct of everyone who reproduces, distributes, or possesses the images of the victim's abuse . . . plays a part in sustaining and aggravating this tragedy." *Id.*

In this case, there are certain specific aggravating factors with respect to the nature of the offense that warrant a sentence within the Stipulated Guidelines Range. The videos recovered from the defendant's cellphone were horrifically violent. The case agent has informed the undersigned that the videos recovered from the defendant's cellphone are the most violent child pornography videos that he has seen in his years of experience in child pornography investigations. That the defendant sought out and watched such violent child pornography for enjoyment is shocking and worrisome. Moreover, the defendant was involved in viewing and trading child pornography for an extended period of time; based on the reports from NCMEC and the videos and images recovered on the defendant's phone, it appears that the defendant's involvement in child pornography extended from at least approximately August 2017 up until approximately the time of his arrest in May 2018.

In addition, the defendant not only downloaded child pornography but actively traded it with others, thereby perpetuating the harm to the victims depicted in the images and videos. In the defendant's sentencing submission, defense counsel argues that mitigation is warranted because the defendant, having led an isolated life due to his mild intellectual disability and speech impediment, was drawn to others who traded child pornography on the internet as a group who accepted him socially. (Defendant's Sentencing Submission at 5-6). This argument makes little sense. Although the Court should take into account the defendant's history and characteristics, as Probation points out, the defendant is able to distinguish between right and wrong. (PSR at 21). There are many other online communities engaged in *legal* activities and discussion that the defendant could have joined to ameliorate his isolation resulting from his mild intellectual disability, speech impediment, and employment as an overnight security guard. Moreover, in

evaluating the defendant's mild intellectual disability and speech impediment, the Court should take into account the fact that the defendant's disability is not so severe to have impeded him from maintaining employment throughout his adult life and from participating in a coherent, recorded post arrest interview.

A sentence within the Stipulated Guidelines Range is also warranted in light of the need for specific and general deterrence. Although the defendant has otherwise led a law-abiding and productive life until the time of his arrest and has been pursuing treatment while on pretrial supervision, the number of videos, the duration of the defendant's conduct, the appalling violence in the videos, and the fact that the defendant traded child pornography all indicate that specific deterrence is warranted in this case. Furthermore, a significant term of incarceration is warranted to send a signal that those who possess child pornography—and particularly those who trade it, increasing the harm to victims—will be severely punished, and to send a signal that our society takes the harm to these victims seriously.

In sum, based on the specific facts of this case, the Government believes that a sentence below the Stipulated Guidelines Range of 135 to 168 months' imprisonment would adequately balance the various considerations under § 3553(a) and achieve the statute's stated objectives.

### IV. Conclusion

For the reasons set forth above, the Government respectfully submits that a sentence within the Stipulated Guidelines Range would be fair and appropriate in this case.

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney

By: _____
Cecilia Vogel
Assistant United States Attorney
(212) 637-1084

Cc: Annalisa Miron, Esq. (by ECF)