UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

―――――――――――――――――――――――――
UNITED STATES OF AMERICA

　　　　　　　-v-　　　　　　　　　　　　　　　　　　18-CR-426 (JPO)

ADAM FIELD,　　　　　　　　　　　　　　　　　　　　ORDER
　　　　　　　　　　　　Defendant.
―――――――――――――――――――――――――

J. PAUL OETKEN, District Judge:

　　　　On April 14, 2020, Defendant Adam Field filed a motion for release under the First Step Act, 18 U.S.C. § 3582(c)(1)(a)(i), arguing that the risks created by the COVID-19 pandemic and by the conditions at FCI Danbury, where he is incarcerated, justify his immediate release. (Dkt. No. 29.) On April 20, 2020, this Court ruled that it lacked authority to act on Defendant's request prior to May 6, 2020, in light of the 30-day exhaustion period in the statute, but recommended that the Bureau of Prisons ("BOP") favorably consider Defendant's request for compassionate release. (Dkt. No. 34.)

　　　　On April 29, 2020, the BOP denied Defendant's request for compassionate release. (Dkt. No. 37-1.) Accordingly, Defendant has renewed his motion for release under the First Step Act. The Government opposes the motion. The Court has reviewed the parties' written submissions addressing the motion. (*See* Dkt. Nos. 29, 30, 31, 32, 33, 35, 36, 37.) For the reasons that follow, the Court intends to grant Field's motion for compassionate release effective May 6, 2020.

**I.　　Legal Standard**

　　　　A court may not modify a term of imprisonment once it has been imposed except pursuant to statute." *United States v. Gotti*, No. 02-CR-743, 2020 WL 497987, at *1 (S.D.N.Y. Jan. 15, 2020). A court is permitted to reduce a term of imprisonment if, after considering the

1

factors in 18 U.S.C. § 3553(a), "it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with the applicable policy statements issued by the Sentencing Commission." 18 U.S.C. § 3582(c)(1)(A). The First Step Act allows a court to reduce a sentence in this manner "upon motion of the defendant" either "after the defendant has fully exhausted all administrative remedies to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf," or after "the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier." *Id.*

## II. Discussion

### A. Exhaustion of Administrative Remedies

Defendant submitted his request for release to the warden of FCI Danbury on April 6, 2020. (*See* Dkt. No. 29-1.) As stated in its April 20 order, the Court has determined that it lacks statutory authority to order Defendant's release until May 6, 2020 — 30 days after Field submitted his request to the warden. Nor does the BOP's denial of his request appear to change that date, because § 3582(c)(1)(a)(i) requires the exhaustion of "all administrative rights to appeal" the BOP's denial, even though any such administrative appeal here is entirely theoretical at this point. Although it is two days before May 6, the Court believes that it does have the authority to provide its reasoning and findings with respect to its decision to grant Defendant's motion for release effective May 6, 2020.

### B. Extraordinary and Compelling Reasons

Turning to the merits of Defendant's motion, the Court finds that there are "extraordinary and compelling reasons" warranting a reduction in his sentence. The applicable policy statement, U.S.S.G. § 1B1.13, outlines four circumstances that constitute "extraordinary and compelling reasons" and thus justify a sentence reduction. One of those circumstances is where

the defendant is "suffering from a serious physical or medical condition . . . that substantially diminishes the ability of the defendant to provide self-care within the environment of a correctional facility and from which he or she is not expected to recover." U.S.S.G. § 1B1.13(1)(A) & cmt. n.1(A).  The policy statement also requires that the defendant not pose "a danger to the safety of any other person or to the community." U.S.S.G. § 1B1.13(2).

The COVID-19 pandemic poses health challenges that are themselves extraordinary.  The novel coronavirus has infiltrated many of the BOP's prisons and jails, affecting inmates and staff.  "The nature of prisons — crowded, with shared sleeping spaces and common areas, and often with limited access to medical assistance and hygienic products — put those incarcerated inside a facility with an outbreak at heightened risk." *United States v. Park*, No. 16-CR-473 2020 WL 1970603, *2 (S.D.N.Y. April 24, 2020).

Defendant suffers from hypertension, a condition that places him at heightened health risk if he were to contract COVID-19.  Before his incarceration he had obesity, although he has experienced significant weight loss while incarcerated.  He also has nonphysical health conditions that present challenges for self-care.  The Court's concerns are heightened by Defendant's place of incarceration.  At FCI Danbury, where Defendant is housed, "[a]s of April 23, there have been 32 positive cases of COVID-19 among staff members and 15 among inmates, one fatal." *Id.* at *4.  Defendant is a nonviolent offender with no prior criminal convictions, and the Court finds that he does not pose a danger to other persons or to the community.

Accordingly, the Court finds that the COVID-19 pandemic, coupled with Defendant's physical and medical condition and the conditions at Defendant's prison facility, provide "extraordinary and compelling reasons" for reducing his sentence.

### C.     Section 3553(a) Factors

The Court has also considered all of the sentencing factors set forth in 18 U.S.C. § 3553(a). As explained by the Court at sentencing, Defendant's crime — which involved possessing and sharing disturbing images of child sexual abuse — was serious. He has now served over half of his 21-month sentence in prison and has a projected release date of December 11, 2020. Under the circumstances, releasing Defendant to home confinement approximately seven months early would not materially undermine the goals of respect for the law, just punishment, and general deterrence, particularly when balanced against the significant risk to Defendant if he were infected. Nor does the Court believe that the goals of specific deterrence and protecting the public require further imprisonment, as Defendant poses a low risk of recidivism or violence. It is true that hypertension is a relatively common medical condition and that there are likely other conditions that pose greater risk from COVID-19 infection. However, in light of the totality of Defendant's health challenges, and the other considerations addressed here, the Court concludes that the pandemic creates a significant danger of the Court's previously imposed incarceratory sentence being "greater than necessary" to comply with the purposes of sentencing. It is also important to note that after his release from FCI Danbury, Defendant's freedom will be significantly restricted during the term of home confinement until December, and he will continue to be subject to strict probationary constraints for five years thereafter. (*See* Dkt. No. 26.)

While this Court previously concluded that a 21-month term of imprisonment was required by the need for just punishment and general deterrence, that same sentence is not required under circumstances where there is a very real risk that it could be transformed into a death sentence.

The Court concludes that a sentence that is "sufficient, but not greater than necessary," to comply with the purposes of sentencing, 18 U.S.C. § 3553(a), is a sentence of time served, followed by a term of supervised release that includes home confinement until December 11, 2020, the date on which the Defendant was expected to complete his custodial sentence.

### III. Conclusion

For the foregoing reasons, Defendant Adam Field's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(a)(i) is granted, effective May 6, 2020.

Defendant shall be resentenced to time served, and shall be released from the custody of the Bureau of Prisons, effective May 6, 2020. Upon release, Defendant shall immediately be placed on supervised release status, with a special condition of home confinement until December 11, 2020. Furthermore, until December 11, 2020, and for five years thereafter, Defendant shall be subject to all the mandatory conditions, standard conditions, and special conditions of supervised release from the original judgment and sentence in this case.

SO ORDERED.

Dated: May 4, 2020
New York, New York

_____
J. PAUL OETKEN
United States District Judge